[ECF. No. 65]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

JEFFREY M. BELLO,

              Plaintiff,

       v.

UNITED PAN AM FINANCIAL CORP.
d/b/a UNITED AUTO CREDIT CORP.,

              Defendant.

Civil No. 19-9118
(CPO/MJS)

## O P I N I O N   A N D   O R D E R

This matter comes before the Court upon defendant United PanAm Financial Corporation's ("Defendant") motion to file an amended answer ("Motion") to plaintiff Jeffrey M. Bello's ("Plaintiff") amended complaint. ECF No. 65. Plaintiff opposes the motion. ECF No. 70. The Court exercises its discretion to decide the Motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## Background

Plaintiff filed a complaint against Defendant in the Superior Court of New Jersey, Law Division, Burlington County, on February 22, 2019, alleging disability discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"). ECF No. 1 at 13.

1

Defendant timely removed the case to this Court on March 29, 2019. Id. at 1-2.

Plaintiff alleges, in this lawsuit, that Defendant wrongfully terminated him on March 1, 2017. ECF No. 37[1] ¶ 43. Plaintiff started working for United Auto Credit Corporation ("UACC")[2] as an area manager in January 2016. Id. ¶ 6. His job responsibilities required him to travel to auto dealerships within his assigned territory to "service and solicit business" from them. Id. ¶ 8. Plaintiff alleged that he was exposed to a toxic chemical in his "work vehicle" in March and June 2016 and suffered serious injuries as a result. Id. ¶¶ 9-10. He alleged that both exposures required him to be hospitalized, and that he consequently suffered from "endocrine disruption in the brain; burning in the throat; angio edema; digestive disruptions; precancerous bladder; swelling and severe muscle cramping (Fibromyalgia); joint pain; and migraine headaches." Id. ¶¶ 9-10, 12.

On December 26, 2016, Plaintiff informed his direct supervisor and District Manager, Mr. David Cevasco first, and then Defendant's Human Resources ("HR") manager, Melissa Regan, about the two incidents, the nature of his medical problems, and his need for accommodations. Id. ¶¶ 14-18. On December 30, 2016, during

---

[1] This document refers to Plaintiff's Amended Complaint filed on July 8, 2021.

[2] UACC is a subsidiary of Defendant. ECF No. 65-3 at 1.

a conference call with Bruce Newmark, COO for Defendant; Gina Gervais, Director of HR; and Mr. Cevasco, Plaintiff informed them that he needed accommodations or would be forced to go on disability leave. Id. ¶¶ 20-21. Plaintiff was provided with a flexible morning work schedule. Id. ¶¶ 22-23. He did not take a leave of absence, but he did file a disability claim. Id.

Further, Plaintiff alleged that in February 2017, he was informed by Mr. Cevasco and Mr. Jourdan St. Germaine, Defendant's Vice President of Operation at the time, that many of Plaintiff's top-performing clients had committed fraud, and Plaintiff would no longer be able to work with them. Id. ¶¶ 33-39. Then, on March 1, 2017, Mr. Cevasco allegedly called Plaintiff to inform him he was being terminated due to his "e-mails." Id. ¶ 43. Plaintiff alleged that despite requests for clarification, he was not provided with any. Id. ¶ 44.

Sometime thereafter, Plaintiff sought unemployment compensation, which Defendant opposed on the ground that Plaintiff was terminated due to "'misconduct' relating to emails." Id. ¶ 46. However, during the unemployment hearing, a representative of Defendant admitted that Plaintiff did not violate the email policy, and instead Plaintiff was terminated because of a "personality conflict." Id. ¶¶ 47-49. Ultimately, Plaintiff did receive unemployment benefits. Id. ¶ 50.

Defendant, in its April 19, 2019 answer [ECF No. 8] to

Plaintiff's first complaint [ECF No. 1], and its August 5, 2021 answer [ECF No. 39] to Plaintiff's amended complaint [ECF No. 37], denied Plaintiff's allegations that he was terminated due to his disability.

In the current Motion, Defendant asserts that UACC was the entity that actually employed Plaintiff, not United PanAm, and that it "legitimately terminated [Plaintiff's] employment based on his abusive and confrontational emails towards other employees." ECF No. 65-1 at 5 (referencing Mr. Cevasco's deposition testimony in in a state court case[3] brought by Plaintiff against his vehicle's manufacturer).

**Procedural History Leading up to the Motion**

This Court originally entered a scheduling order on May 2, 2019 setting October 11, 2019 as the deadline for the parties to submit amended pleadings. ECF No. 10.

However, the Court granted Plaintiff leave to file a motion to amend his complaint on or before November 13, 2020, which Plaintiff did. ECF No. 24-25. Plaintiff sought to add a retaliation claim under the NJLAD, a defamation claim, and a "wrongful denial of benefits" claim. ECF No. 33 at 4-10. Plaintiff explained that

---

[3] This case is Bello v. Cadillac. See 65-2 at 32; ECF No. 25-7 (referring to the case as Bello v. General Motors LLC)). Plaintiff asserts that Defendant was not a party to that case [ECF No. 25-1 at 6-7] and Defendant does not refute that assertion [ECF No. 65-1 at 10-11].

the new claims were based on documents turned over during discovery as well as Mr. Cevasco's deposition testimony in <u>Bello v. General Motors</u>. ECF No. 25-1.

Defendant filed its opposition to Plaintiff's motion to file an amended complaint on December 7, 2020, arguing that Plaintiff's motion was futile because (1) Plaintiff's defamation claim was barred by the litigation privilege, (2) the Court did not have jurisdiction to hear the "wrongful denial of benefits" claim because that claim fell within the exclusive jurisdiction of the New Jersey Workers' Compensation Court, and (3) Plaintiff's retaliation claim was insufficiently pled and also barred by the litigation privilege. ECF No. 28. Plaintiff filed his reply on December 10, 2020. ECF No. 29.

On June 21, 2021, Judge Kugler granted in part and denied in part Plaintiff's motion to amend the complaint. ECF No. 33-34. Plaintiff was only permitted to amend his complaint to add the retaliation claim.[4] ECF No. 34. Judge Kugler denied Plaintiff's defamation claim, finding that he did not make out a prima facie case because he did not sufficiently allege damages.[5] <u>Id.</u> at 6.

_____

[4] The retaliation claim alleged that Mr. Cevasco contacted in-house counsel seeking legal advice regarding Plaintiff's termination one day after Plaintiff requested work accommodations for his disability. ECF No. 25-1 at 7; ECF No. 33 ¶ 18.

[5] Defendant argued against the addition of the defamation claim because Plaintiff did not satisfy all the elements. ECF No. 33 at 6. Judge Kugler agreed. <u>Id.</u> However, Defendant argued in the

Judge Kugler denied Plaintiff's "wrongful denial of benefits claim," finding it futile for a number of reasons, including that it was "barred by the exclusivity provision of the New Jersey Workers' Compensation Act." ECF No. 33 at 7.

Pursuant to Judge Kugler's opinion, Plaintiff filed his amended complaint on July 8, 2021. ECF No. 37. Defendant filed its answer to the amended complaint on August 5, 2021. ECF No. 39.

After this, the parties continued to engage in discovery. Plaintiff deposed Mr. Newmark on October 28, 2021. ECF No. 65-1 at 6. Plaintiff asked Mr. Newmark about the December 30, 2016 conversation between Plaintiff, Mr. Newmark, and other UACC employees during which Plaintiff discussed his need for accommodations. ECF No. 65-2 at 5-6. Plaintiff then sought to play Mr. Newmark a recording of that conversation. Id. This was the first time that counsel for Defendant learned that this recording existed because Plaintiff had not produced it in his Initial Disclosures as required by Federal Rule of Civil Procedure

---

alternative that because the defamation claim was based on Mr. Cevasco's deposition testimony in another case, the litigation privilege protected this testimony from being used for the purpose Plaintiff sought. Id. at 4-6. Judge Kugler explained that he could not "conclude that Plaintiff's defamation claim is barred by the litigation privilege at this time" because Defendant did not prove that all four elements of the privilege were met. Id. at 5. Judge Kugler also found the same regarding Defendant's assertion of the litigation privilege against Plaintiff's retaliation claim. Id. at 10.

26(a)(1), or in response to Defendant's discovery requests.[6] <u>Id.</u> at 7.

On November 5, 2021, Defendant requested leave to file an amended answer in response to learning about this recording. ECF No. 52. Plaintiff filed an opposition to Defendant's request the same day. ECF No. 53.

At the March 30, 2022 status conference, the Court granted Defendant leave to file a motion for leave to amend its answer and plead a counterclaim.[7] ECF No. 64.

Defendant filed this Motion on April 18, 2022. ECF No. 65. Plaintiff filed his opposition on May 9, 2022. ECF No. 70. Defendant filed its reply on June 14, 2022. ECF No 76.

**<u>Defendant's Motion to Amend its Answer</u>**

Defendant's proposed amendments to its answer include two new affirmative defenses: the "after-acquired evidence" defense and the "litigation privilege" defense. ECF No. 65-1; ECF No. 65-2 at 51. Defendant also seeks to amend two factual responses to "add

---

[6] Defendant specifically requested, "All photographs and audio or video recordings of any conversation or event that relates to any of the allegations in the Complaint." ECF No. 65-1 at 7-8.

[7] Defendant argued that Plaintiff allegedly violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 <u>et seq.</u> (West 1967) by recording the December 30, 2016 call without notifying the other parties, at least one of whom was in California at the time, because CIPA requires a person to have the consent of all parties to a conversation before recording such a "confidential communication." Cal. Penal Code § 632(a) (West 1967). ECF No. 52.

more clarity concerning Plaintiff's employer." ECF No. 65-1; ECF No. 65-2 at 45. Although Defendant was granted leave to move to file a counterclaim based on CIPA [ECF No. 52] and the proposed amended answer is titled "Defendant's Amended Answer to Amended Complaint, Separate Defenses, and Counterclaim" [ECF No. 65-2 at 42], it does not appear that Defendant included a counterclaim in the Motion.

After-Acquired Evidence Defense

If, during an unlawful termination or employment discrimination lawsuit, the defendant-employer discovers evidence of the plaintiff-employee's misconduct, which constitutes an independent, "lawful and legitimate ground[]" for that employee's termination, the defendant-employer can present this "after-acquired evidence" to show that the defendant-employer would have terminated the plaintiff-employee anyway because of his misconduct if the defendant-employer had known about it. McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362-63 (1995). This evidence does not affect the defendant-employer's liability but could limit the damages it would have to pay to the employee if ultimately found liable of unlawful discharge. Id. "The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." Id. at 362; see also Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1073-74 (3d Cir. 1995).

Defendant argues that Plaintiff violated "the Company's Standards of Conduct policy, which prohibits dishonesty" by recording the December 2016 phone call with UACC employees because they did not know they were being recorded. ECF No. 65-1 at 6; ECF No. 65-2 at 51. Accordingly, Defendant explains, Plaintiff "would have immediately been terminated had UACC known of [the recording] at the time." Id. Therefore, if Defendant is found liable of disability discrimination, "economic damages should run only from the date of discharge to the time that the wrongdoing was discovered." ECF No. 65-1 at 9.

Litigation Privilege Defense

The litigation privilege[8] ensures that "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389, 401 (D.N.J. 2009). This privilege is applicable to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation;

_____

[8] "In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." See Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000). Plaintiff brought only New Jersey state claims against Defendant (disability discrimination and retaliation under NJLAD). Therefore, the precise scope of the litigation privilege is defined by state law. See Hawkins v. Harris, 661 A.2d 284, 289 (N.J. 1995). This Court has jurisdiction based on diversity of citizenship of the parties.

and (4) that have some connection or logical relation to the action." Id. The purpose of the privilege is so litigants and their representatives "have an unqualified opportunity to explore the truth of a matter without fear of recrimination." Thomas v. Ford Motor Co., 137 F. Supp. 2d 575, 585 (D.N.J. 2001) (quoting Hawkins v. Harris, 661 A.2d 284, 290 (N.J. 1995)).

In this Motion, Defendant seeks to assert the litigation privilege defense against Plaintiff's retaliation claim, specifically paragraphs 53-55 and paragraph 72 of the Amended Complaint, which refer to statements made by Mr. Cevasco during a deposition in a state court case to which Defendant was not a party. ECF No. 65-1 at 6, 10-11. Defendant argues there is "a direct connection" between Mr. Cevasco's deposition testimony in the state court products liability case and "achieving Defendant's object in this litigation, which is to establish the lawfulness of Plaintiff's termination" because Mr. Cevasco was an employee of UACC at the time of the deposition, and his testimony concerned Plaintiff's employment at UACC and the legitimate reasons for his termination. Id. at 10.

### Factual Allegations

Defendant also wants to amend its responses to two factual allegations (Paragraphs 27 and 28 in its answer to Plaintiff's amended complaint [ECF No. 39 ¶¶ 27-28]) to "add more clarity concerning Plaintiff's employer." ECF No. 65-1 at 6; ECF No. 65-2

at 45.

Paragraph 27 read, "Defendant denies that [sic] allegations contained in Paragraph 27, except to admit that <u>Plaintiff's employer</u> filed injury reports with its insurance carrier on January 4, 2017." ECF No. 39 ¶ 27 (emphasis added). Defendant's proposed revision to it is, "Defendant denies that [sic] allegations contained in Paragraph 27, except to admit that <u>Plaintiff's employer, UACC,</u> filed injury reports with its insurance carrier on January 4, 2017." ECF No. 65-2 at 45 (emphasis added).

Paragraph 28 read, "Defendant denies the allegations contained in Paragraph 28, except to admit that <u>Plaintiff's employer</u> completed a First Report of Injury on January 27, 2017." ECF No. 39 ¶ 28 (emphasis added). Similarly, Defendant's proposed revision to it is, "Defendant denies the allegations contained in Paragraph 28, except to admit that <u>Plaintiff's employer, UACC,</u> completed a First Report of Injury on January 4, 2017." ECF No. 65-2 at 45 (emphasis added).

## Discussion

Where a party moves to amend after the deadline in a scheduling order has passed, the "good cause" standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. <u>Premier Comp Sols., LLC v. UPMC</u>, 970 F.3d 316, 319 (3d Cir. 2020). "A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard [to amend

11

a pleading]." Id. Here, however, Defendant filed its motion consistent with the deadline provided in the Court's March 30, 2022 scheduling order so any analysis under Rule 16 is unnecessary. ECF No. 64. Thus, the Court must determine whether it would be appropriate to grant Defendant's Motion under Federal Rule of Civil Procedure 15. "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Because Plaintiff opposes Defendant's Motion, the Court's leave is required. Id. Leave to amend may be denied "where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" United States ex rel. Schumann v. Astrazeneca Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (quoting Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)).

Undue Delay, Bad Faith, Dilatory Motives

The Court does not find that Defendant acted in bad faith or with undue delay or dilatory motives in moving to assert the after-acquired evidence affirmative defense. Courts generally grant leave to amend where, during discovery, a party discovers "new evidence." See, e.g., Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1460 (D.N.J. 1986) (granting moving party's motion to

12

amend upon its discovery of new evidence and where it did "not appear that the amendment would cause undue delay or that [movants had] a dilatory motive"). In this case, Defendant sought leave to file this motion via a letter application just days after learning of new evidence — Plaintiff's surreptitious recording of an important phone call between the parties. ECF No. 52. If anything, it is Plaintiff's dilatory conduct that caused the delay in Defendant's assertion of this defense.

The Court also does not find that Defendant acted in bad faith or with undue delay or dilatory motives in moving to assert the litigation privilege defense. Defendant first raised the litigation privilege in opposition to Plaintiff's motion to add retaliation and defamation claims to his amended complaint. ECF. No. 28. Although Defendant did not successfully plead this privilege to prevent the addition of the retaliation claim to Plaintiff's amended complaint, the Court only found that Defendant did not meets its burden of proving the privilege "at [that] time." ECF No. 33 at 5, 10. Because the Court did not make its finding with respect to the litigation privilege with prejudice, however, Defendant did not act dilatorily or with bad faith in asserting it as an affirmative defense in the current Motion.

Lastly, the Court finds that Defendant did not act in bad faith or with undue delay or dilatory motives in seeking to make the factual revisions about the relationship between UACC and

Defendant in this Motion. Plaintiff named "United Pan Am [sic] Financial Corporation, dba United Auto Credit Corporation" as the defendant in his initial complaint first filed in state court on February 22, 2019. ECF No. 1 at 1, 7. Plaintiff also acknowledged in this complaint, "At all times relevant hereto, Defendant, United Auto Credit Corporation (hereinafter, "Defendant"), was a New Jersey 'employer' as defined in N.J.S.A. § 10:5-5(e), with its principal place of business in Newport Beach, California . . . ." ECF No. 1 ¶ 4.

In its notice of removal to federal court, Defendant noted, "United is a corporation that maintains its principal place of business in Newport Beach, California. It was incorporated in California. United is therefore a citizen of California." ECF No. 1 at 2 (internal citation omitted). In a footnote to that acknowledgment, Defendant wrote,

> United did not employ Plaintiff and therefore, should not be named as a defendant in this action. United Auto Credit Corporation ("UACC") was Plaintiff's employer. UACC is a corporation that was incorporated in California and maintains its principal place of business in California. UACC is therefore a citizen of California. UACC, which has not been served with process, consents to the removal of this action.

Id.

Despite this footnote, Defendant did not file a motion to dismiss the complaint on the basis that the wrong entity was named as defendant. Instead, Defendant filed an answer on April 19, 2019.

ECF No. 8. In the answer, Defendant first acknowledged, "Defendant United PanAm Financial Corporation, incorrectly named as United Pan Am Financial Corporation ('defendant' or 'United'), by and through its attorneys, . . . answers plaintiff Jeffrey M. Bello's ('plaintiff') Complaint as follows[.]" <u>Id.</u> at 1. The only correction it made to the entity named as defendant was to its spelling. However, in paragraphs 3 and 4, Defendant admitted that "plaintiff's employer, United Auto Credit Corporation ('UACC') believed plaintiff was physically capable of performing the duties of an Area Manager" and "that UACC employed plaintiff and that it maintains its principal place of business at the address alleged." <u>Id.</u> ¶¶ 3-4. Defendant's second affirmative defense was also that "United [PanAm] did not employ plaintiff." <u>Id.</u> at 6.

In its answer to Plaintiff's amended complaint filed on August 5, 2021, Defendant again noted Plaintiff's misspelling of United PanAm Financial Corporation. ECF No. 39 at 1. Defendant included the same paragraphs 3 and 4 discussed above, indicating that UACC was Plaintiff's employer. <u>Id.</u> ¶¶ 3-4. Defendant also admitted that, "Plaintiff began working for UACC as an Area Manager . . . ." <u>Id.</u> ¶ 6. And Defendant again asserted the affirmative defense that "[t]he named Defendant did not employ Plaintiff." <u>Id.</u> at 8.

Therefore, there has not been undue delay, bad faith, or dilatory motives in Defendant's Motion to make these revisions to its answer. Rather, Defendant seeks to do so to ensure its factual

15

responses are consistent with its previous assertions and defenses.

In conclusion, the Court finds that Defendant did not act with undue delay or in bad faith or with dilatory motives with respect to its proposed amendments, which weighs in favor of granting Defendant's Motion.

<u>Futility</u>

The next factor the Court considers in determining whether to grant Defendant's Motion is the futility of the proposed amendments. Here, Plaintiff argues broadly that Defendant's proposed amendments are futile, untimely, and would prejudice Plaintiff. ECF No. 70 at 4. With respect, first, to the after-acquired evidence defense, Plaintiff argues the recording of the December 30, 2016 call was legal and was "timely" provided to Defendant after the Court ordered him to do so. <u>Id.</u> at 13-16.

The Court looks to the pleading standards for claims, defenses, and affirmative defenses to determine the futility standards for amended complaints and amended answers. See <u>Parker v. City of Newark</u>, Civ. No. 17-4615, 2018 WL 10809348, at *4 (D.N.J. Sept. 13, 2018). Federal Rule of Civil Procedure 8(a) provides that a claim for relief must state, in relevant part, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]he futility analysis on a motion to amend [a claim] is essentially

the same as a Rule 12(b)(6) motion." <u>Parker</u>, Civ. No. 17-4615, 2018 WL 10809348, at *4 (quoting <u>Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC</u>, Civ. No. 11-7119, 2014 WL 1343075, at *3 (D.N.J. Apr. 4, 2014). The Court typically evaluates whether the claims "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009) (internal quotations omitted).

Federal Rule of Civil Procedure 8(c) prescribes the rules for pleading affirmative defenses: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]" Fed. R. Civ. P. 8(c). Therefore, to satisfy Rule 8(c), for an affirmative defense to be sufficiently pled, it need not contain the detailed factual allegations that a claim or a defense[9] must. <u>See</u> Fed. R. Civ. P. 8(a)-(b); <u>see, e.g.,</u> <u>Newborn Bros. Co. v. Albion Eng'g Co.</u>, 299 F.R.D. 90, 93 (D.N.J. 2014) (holding that the heightened <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Iqbal</u> standard is not applicable to the pleading of affirmative defenses under Rule 8(c)); <u>Signature Bank v. Check-X-Change, LLC</u>, Civ. No. 12-2802 , 2013 WL 3286154, at *5 (D.N.J. June 27, 2013) (reviewing relevant case law and agreeing that "the textual

---

[9] "In responding to a pleading, a party must: state in short and plain terms its defenses to each claim asserted against it[.]" Fed. R. Civ. P. 8(b)(1)(A).

analysis by the Supreme Court in Twombly is specific to a claim for relief under Rule 8(a), and differs from the textual analysis of an affirmative defense under Rule 8(c)."); Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) ("In light of the differences between Rules 8(a) and 8(c) in text and purpose, the Court concludes that Twombly and Iqbal do not apply to affirmative defenses."). However, affirmative defenses must survive a motion to strike under Federal Rule of Civil Procedure 12(f). Affirmative defenses have been found insufficient and therefore have failed to survive a motion to strike "only where 'the defense could not possibly prevent recovery under any pleaded or inferable set of facts.'" Santander Bank, N.A. v. Friedman, Schuman, Appelbaum, Nemeroff & McCaffery, P.C., Civ. No. 14-413, 2014 WL 1621792, at *2 (D.N.J. April 17, 2014) (quoting Newborn Bros. Co., 299 F.R.D. at 93).

Accordingly, an amendment to an answer proposing an affirmative defense is futile if the proposed affirmative defense "is not recognized as a defense to the cause of action," Newborn Bros. Co., 299 F.R.D. at 93 (quoting FTC v. Hope Now Modifications, LLC, Civ. No. 09-1204, 2011 WL 883202, at *7 (D.N.J. Mar. 10, 2011) (quotations omitted)), or if the proposed affirmative defense "could not possibly prevent recovery under any pleaded or inferable set of facts." Santander Bank, Civ. No. 14-413, 2014 WL 1621792, at *2.

"After-acquired evidence" is an affirmative defense. See Gorman v. Meeder Fin. Servs. Inc., Civ. No. 04-00499, 2007 WL 1657188, at *7 (D.N.J. June 5, 2007) (concluding after-acquired evidence is an affirmative defense under Federal Rule of Civil Procedure 8(c)); Nesselrotte v. Allegheny Energy, Inc., 615 F. Supp. 2d 397, 407 (W.D. Pa. 2009) (discussing the "[d]efendants' affirmative defense of after-acquired evidence").

Further, the after-acquired evidence defense is sufficient here because it likely can "prevent recovery under any pleaded or inferable set of facts." In this case, the "after-acquired evidence" Defendant discovered is the recording of the December 2016 phone call that Plaintiff made without the knowledge of anyone on the call. Defendant alleges that this surreptitious recording is violative of the company's honor code, which prohibits dishonesty. Thus, the Court finds that this after-acquired evidence can apply as a defense to Plaintiff's claims, and finds that Plaintiff has not carried his burden of showing Defendant's after-acquired evidence defense is futile. This weighs in favor of granting the Motion with respect to the after-acquired evidence defense. However, in making this preliminary determination, the Court does not make any findings concerning the merits of Plaintiff's claims or Defendant's defenses thereto.

Next, Plaintiff argues the litigation privilege defense is futile because the Court, in deciding Plaintiff's motion to amend

the complaint, already "considered all arguments" about whether the litigation privilege bars Plaintiff's retaliation claim and determined that it does not. ECF No. 70 at 4. Plaintiff argues that Defendant's assertion of the litigation privilege as an affirmative defense in this Motion constitutes an "unauthorized motion for reconsideration," which is an "inappropriate expansion of the Court's leave." Id. at 4.

Based on the record, the Court finds that Defendant's proposed addition of the litigation privilege defense is futile, although for reasons different than Plaintiff argues. Rather, it is futile because while the litigation privilege is an affirmative defense, see JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr., Civ. No. 18-5221, 2019 WL 1951123, at *7 (D.N.J. May 2, 2019), Defendant has not met its burden that the litigation privilege could "possibly prevent recovery [for Plaintiff's retaliation claim] under any pleaded or inferable set of facts." See Santander, Civ. No. 14-413, 2014 WL 1621792, at *2.

Defendant first raised the litigation privilege in opposition to Plaintiff's motion to amend his complaint to add a defamation claim and the NJLAD retaliation claim. ECF No. 28. Judge Kugler found that the litigation privilege, as presented at that time, did not bar those claims because Defendant did not address the

third and fourth prongs necessary for the privilege to apply.[10] ECF No. 33 at 5.

Like Judge Kugler's previous ruling, the Court does not find that Defendant has sufficiently addressed these prongs in its current Motion to warrant the addition of the affirmative defense in Defendant's amended answer. Specifically, Defendant has not established how the deposition testimony of Mr. Cevasco, a third-party witness to Plaintiff's products liability case against General Motors, was made "to achieve the objects of the [product's liability] litigation," when Defendant was not even a party to that case.

Defendant is correct that a deposition is a "quintessential judicial proceeding," see Rickenbach, 635 F. Supp. 2d at 402 (quoting Ruberton v. Gabage, 654 A.2d 1002, 1007 (N.J. App. Div. 1995)), and that Mr. Cevasco was "authorized by law" to speak on Defendant's behalf in the state court case. But Defendant has not shown that Mr. Cevasco was "authorized by law" to speak on behalf of the defendant in that case, General Motors. See Hawkins, 661 A.2d at 291 ("The immunity that attends judicial proceedings protects both counsel and other representatives who are employed

---

[10] Although Judge Kugler did not find that Defendant demonstrated that Plaintiff's defamation claim should be barred by the litigation privilege, Judge Kugler did not permit the defamation claim to be added to the amended complaint because Plaintiff did not sufficiently plead damages. ECF No. 33 at 6-7.

to assist a party in the course of litigation. The privilege protects an attorney's agents and employees in what they do at the attorney's request.") (internal citation omitted). Mr. Cevasco was not an employee or agent of General Motors or General Motors' attorneys. Mr. Cevasco was an employee and representative of United PanAm and was called as a fact witness in the products liability case because of his position as Plaintiff's previous employer. Defendant has not shown or presented any authority for how the testimony of a nonparty fact witness, who has no stake in the outcome of the case, "achieve[d] the objects of the litigation."

Additionally, the independent research the Court has done does not support applying the litigation privilege in the way Defendant seeks to invoke it. The litigation privilege applies when statements or conduct of a litigant (or their representatives) in one case are used against that same litigant (or their representatives) to support a different claim against them, such as a tort like defamation. See, e.g., Giles v. Phelan, Hallinan & Schmieg, LLP, 901 F. Supp. 2d 509 (D.N.J. 2012) (noting "the litigation privilege protects attorneys not only from defamation actions," but also intentional and negligent infliction of emotional distress, material misrepresentation, and negligent misrepresentation, fraud, and malicious interference with prospective economic advantage); Thomas, 137 F. Supp. 2d at 580, 586 (finding the defendant's assertion of the litigation privilege

against the plaintiff's defamation claim valid, when the defamation claim was based on the defendant's statement to state law enforcement authorities in an earlier case that the plaintiff strangled and killed his wife, because the defendant had the right to explore this theory of liability as a possible defense to the plaintiff's underlying products liability action); Hawkins, 661 A.2d at 286-292 (finding the litigation privilege barred the plaintiff from bringing suit against private investigators and attorneys who represented the plaintiff's adversary in a previous case, based on the alleged emotional distress they caused the plaintiff while prosecuting that case).

Defendant's assertion of the litigation privilege in this case is markedly different from the cases described above, and Plaintiff has not provided any authority or analysis to the contrary. Here, Defendant asserts the litigation privilege as a proposed affirmative defense to Plaintiff's NJLAD retaliation claim, arising, in part, from statements made by Defendant's representative, during a case in which Defendant was not even a litigant. Plaintiff is not alleging that Mr. Cevasco's deposition testimony damaged him by virtue of being spoken or at the time of the deposition, but instead that the deposition testimony uncovered Defendant's alleged past conduct that formed the basis of an independent, substantive claim that already harmed Plaintiff in the past. Defendant has not demonstrated why this is improper.

See <u>Nestle Foods Corp. v. Aetna Cas. and Sur. Co.</u>, 129 F.R.D. 483, 486 (D.N.J. 1990) (citing <u>U.S. v. Hooker Chemicals & Plastics Corp.</u>, 90 F.R.D. 421, 426 (D.N.J. 1981)) ("Using fruits of discovery from one lawsuit in another litigation, and even in collaboration among various plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure."). Because the litigation privilege defense is not supported, on this record, by any pleaded or inferable facts, the amendment of the answer to include this privilege is futile.

Lastly, Plaintiff argues that Defendant's two factual revisions that specify that UACC, not Defendant, was Plaintiff's direct employer are futile because Plaintiff's official employment paperwork indicated United PanAm Financial Corporation was his employing "company."[11] Additionally, Plaintiff argued that Defendant "**never disputed** that the Plaintiff was indemnified through United PanAm Financial Corp. <u>as an employee</u> in the New Jersey Workman's [sic] Compensation Court over the past four years." ECF No. 70 at 18 (alterations in original).

The Court disagrees with Plaintiff that these two factual revisions are futile. Plaintiff is correct that some of the

---

[11] Plaintiff listed the various documents in support of this argument: his signed company handbook, Defendant's hiring "disclosures," Defendant's hiring disclosure and authorization for a background check, Plaintiff's 401K, Plaintiff's health insurance, and Plaintiff's workmen's compensation insurance coverage. ECF No. 70 at 17.

documents he cited designate United PanAm Corporation as his employer, such as in his workmens' compensation insurance coverage and in a document explaining the company's 401K. ECF No. 70-8 at 1-2; 70-17 at 1. In a document seeking Plaintiff's consent to a background investigation, "the Company" is listed as "United Pan-Am Financial-United Auto Credit Corp." ECF No. 70-15 at 1. Plaintiff is also correct that United PanAm Corporation is listed as the insured entity and as the employer for Plaintiff's workmens' compensation insurance coverage. ECF No. 70-8 at 1-2. Plaintiff's notice of determination for unemployment benefits, however, lists UACC as his employer. ECF No. 70-12.

Plaintiff is correct that the two entities are used seemingly interchangeably in official documents. The Court also notes that Defendant did not ever move to dismiss Plaintiff's complaint as having named the wrong defendant.

However, in its answer, Defendant has specified that UACC was Plaintiff's employer. ECF No. 8 ¶¶ 3-4(answer to complaint); ECF No. 39 ¶¶ 3-4 (answer to amended complaint). Additionally, it listed as its second affirmative defense that, "United [PanAm] did not employ plaintiff." ECF No. 8 at 6 (answer to complaint); ECF No. 39 at 8 (answer to amended complaint).

The proposed amendments to paragraphs 27 and 28 in the current Motion are consistent with how Defendant explained Plaintiff's relationship with UACC in paragraphs 3 and 4 of its answer to

25

Plaintiff's amended complaint. ECF No. 39 ¶¶ 3-4. Because Defendant has already made this distinction in its answer, the Court finds that these two revisions are not futile, which weighs towards granting Defendant's Motion with respect to this amendment.

      Prejudice

      Lastly, the Court finds that granting Defendant's Motion with respect to the after-acquired evidence defense will not prejudice Plaintiff. As addressed already herein, this amendment is predicated on Plaintiff's dilatory conduct; it would be prejudicial to Defendant, not Plaintiff, not to give Defendant the opportunity to respond.

      "Prejudice is generally evaluated by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum." Young, 152 F. Supp. at 355-56 (quoting High 5 Games, LLC. v. Marks, Civ. No. 13-7161, 2017 WL 349375, at *4 (D.N.J. Jan. 24, 2017)).

      Plaintiff argues cursorily that the amendments are unduly prejudicial. ECF No. 70 at 17. This is not enough to overcome "the liberal approach set forth in Rule 15." Pulchalski v. Franklin Cty., Civ. No. 15-1365, 2016 WL 1363764, at *1 (M.D. Pa. Apr. 6, 2016).

"The fact that some additional discovery may result from [a party's] amendment is not enough to establish the sort of prejudice necessary to deny [that party's] motion." Evonik Degussa GMBH v. Materia, Inc., Civ. No. 09-636, 2011 WL 13152274, at *6 (D. Del. Dec. 13, 2011) (permitting amendment under Rule 15 despite the resulting need to conduct further depositions); see also Williams v. City of York, Civ. No. 15-0493, 2016 WL 2610007, at *6 (M.D. Pa. May 6, 2016) (permitting amendment under Rule 15 despite potential need for further depositions, stating that "[i]nasmuch as the amendment would result in prejudice ... it can be cured by extending the discovery deadlines[.]").

Additionally, because the proposed defense responds to claims and allegations brought by Plaintiff, it does not broaden the scope" of the case. Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp., 53 F.R.D. 582, 584 (W.D. Pa. 1971) ("[A]mendments which will unduly broaden the scope of the action should not be allowed particularly where the action has been pending for a considerable period of time and discovery has been practically completed.").

The third consideration for determining whether granting the amendment would prejudice Plaintiff, whether the amendment would prevent Plaintiff from bringing a timely action in another forum, is not applicable.

In sum, granting Defendant's Motion to include the after-

acquired evidence defense is not prejudicial to Plaintiff. It puts both parties on an equal playing field, which became uneven in part due to Plaintiff's surprise launch of his recording of the December 2016 call, which should have been provided to Defendant earlier.

The Court also finds that Defendant's Motion to include the two factual revisions is not prejudicial to Plaintiff. These minor changes would make two paragraphs in Defendant's answer consistent with two other paragraphs and one of its affirmative defenses in its answer to Plaintiff's first complaint and amended complaint. Defendant is not changing anything on which Plaintiff has relied and is not presenting anything new that will require additional discovery. See Venuto, Civ. No. 17-3363, 2020 WL 998945, at *4 (permitting the defendant's motion to amend to correct word processing errors in its response to currently existing causes of action).

Because the Court has found that the litigation privilege defense, as presented by Defendants here, is futile, it need not address the issue of prejudice with regard to that proposed amendment.

## Conclusion

For the reasons set forth, Defendant's Motion to amend its answer [ECF No. 65] is **GRANTED** in part and **DENIED** in part. Defendant is permitted to add the after-acquired evidence defense

and to make the proposed revisions to paragraphs 27 and 28 of its

answer. Defendant is not permitted to add the litigation privilege

defense. **SO ORDERED.**


                                    s/ Matthew J. Skahill
                                    MATTHEW J. SKAHILL
                                    United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn
     United States District Judge